UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-9297 PSG (FFMx) | Date | April 20, 2017 |
| Title | Beatriz Carbajal v. HSBC Bank U.S.A., N.A. *et al.* | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |

| | |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **Order GRANTING IN PART and DENYING IN PART Defendants' Motion to Dismiss**

Before the Court is Defendants Ocwen Loan Servicing, LLC and HSBC Bank USA, N.A.'s motion to dismiss Plaintiff Beatriz Carbajal's First Amended Complaint ("FAC"). Dkt. # 31. Defendants Altisource Solutions, Inc. and PennyMac Holdings, LLC ("PennyMac") do not join in this motion, and PennyMac has filed a separate motion to dismiss on different causes of action set for hearing on May 22, 2017. *See* Dkt. # 35. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having considered the arguments presented in the papers, the Court DENIES Defendants' motion to dismiss the third cause of action for negligent misrepresentation and GRANTS Defendants' motion to dismiss the fourth cause of action for breach of contract WITH LEAVE TO AMEND.

I. Background

Plaintiff Beatriz Carbajal purchased her home at 18032 Flynn Drive, Unit 5404, Canyon Country, California on June 7, 2011. *FAC* ¶ 27. She funded the purchase of the home with a $154,400 purchase-money loan. *Id.* ¶ 28. Yet, despite making timely payments on the loan, Carbajal learned in April 2014 that Defendant PennyMac had filed a Notice of Default on the property. *Id.* ¶¶ 33–34. PennyMac seeks to foreclose on a prior, unpaid promissory note of $307,500, here referred to as the "Prior Mortgage," issued to a previous owner of the Flynn Drive property.[1] *Id.* ¶¶ 18, 33. Carbajal alleges that she first received notice of the Prior

[1] The FAC actually alleges the existence of four prior mortgages on the property. *FAC* ¶¶ 11, 14–15, 19, 24, 27. Plaintiff alleges that the latter two mortgages were extinguished through non-judicial foreclosures, *id.* ¶¶ 21, 26, and the first mortgage should have been extinguished with funds from the second mortgage, *id.* ¶ 14. Although Plaintiff alleges that the second mortgage was never funded, the parties do not appear to dispute that the only prior mortgage remaining on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-9297 PSG (FFMx) | Date | April 20, 2017 |
| Title | Beatriz Carbajal v. HSBC Bank U.S.A., N.A. *et al.* | | |

Mortgage on April 16, 2014, when she received notice of PennyMac's non-judicial foreclosure proceedings. *Id.* ¶ 34. She asserts that she had no notice of the Prior Mortgage when she purchased the property in June 2011. *Id.*

Carbajal filed this litigation in California state court on March 22, 2016. Dkt. # 1-1, at p. 2. Defendants removed to this Court on the basis of diversity jurisdiction on December 16, 2016. Dkt. # 1. The operative Complaint is the FAC, filed on January 31, 2017, which asserts four causes of action. Dkt. # 22. The first and second causes of action (1) to quiet title to real property and (2) for declaratory relief are asserted against Defendant PennyMac and are not at issue here. *See FAC* ¶¶ 35–47. The third and fourth causes of action for (3) negligent misrepresentation and (4) breach of contract implicate the three other Defendants, HSBC Bank USA, N.A., Ocwen Loan Servicing, LLC, and Altisource Solutions, Inc. (collectively, "Seller Defendants"), and they are the primary focus of the motion now before the Court. At the time of the sale, HSBC owned the property, Ocwen acted as HSBC's attorney-in-fact and authorized agent, and Altisource executed the Purchase and Sale Agreement on behalf of Ocwen. *See FAC* ¶¶ 26–28.

In the motion, one of the central disputes is whether Carbajal had notice of the Prior Mortgage at the time that she purchased the home in June 2011 and whether her claims against the Seller Defendants are time-barred. At the time of closing, the Seller Defendants and the escrow agent, non-party Premium Title of California, Inc. ("Premium Title"), issued three categories of documents to Plaintiff. *See id.* ¶ 27. Premium Title is affiliated with the Seller Defendants. *Id.* ¶ 49(d). The documents were (1) the Escrow Instructions, *FAC* ¶¶ 29–32, (2) two Preliminary Title Reports from May 2011 and July 2011, *id.*, Exs. 24, 25, and (3) the Purchase and Sale Agreement, dated June 7, 2011, *id.*, Ex. 17. In addition to the documents, no party disputes that the Prior Mortgage was publicly recorded at the county recorder's office. *See id.* ¶ 13. It also appears that the grant deed, issued to Plaintiff on July 18, 2011, did not contain notice of the Prior Mortgage. *See FAC*, Ex. 19.

The first document is the Escrow Instructions. They were delivered by the Seller Defendants to the escrow holder, Premium Title, on June 13, 2011. *Id.* ¶ 29, Ex. 18. The Escrow Instructions represented that Premium Title was to transfer the property to Carbajal "Free From Encumbrances Except: . . . (3) First Deed of Trust to record securing note in the amount of $154,400.00." *Id.* ¶ 31. The HSBC entity name is type-printed on the signature line at the end of the Escrow Instructions. *Id.* ¶ 30.

---

the property at the time of the sale to Plaintiff is the second mortgage for $307,500. *Id.* ¶ 49(a), (b).

The second set of documents are the Preliminary Title Reports. *Id.*, Exs. 24, 25. Both were issued by Premium Title. *Id.*; *see also id.* ¶ 49(d). In the FAC, Carbajal contends that the Preliminary Title Reports that she received did not list the Prior Mortgage as an encumbrance on the property. *Id.* ¶ 49(e). Plaintiff attached the two Preliminary Title Reports to the Complaint. *Id.*, Exs. 24, 25.

The first Preliminary Title Report was prepared by Premium Title's Matt Orr on May 20, 2011. *Id.*, Ex. 24. It lists the Prior Mortgage as an encumbrance on the property in Schedule B, Exemption 10. *Id.* In a Request for Judicial Notice, Defendants ask the Court to take notice of a "Receipt of Preliminary Title Report" from June 13, 2011, where Plaintiff allegedly acknowledges receipt of the May 2011 Preliminary Title Report. *See Defendants' Request for Judicial Notice*, Ex. 1. Plaintiff disputes the authenticity of the receipt and asserts that it is common in the real estate industry for the seller to clear prior encumbrances on the title at closing, so even if Plaintiff had notice of the report, it would be justifiable for Plaintiff to believe that she would receive title free of encumbrances after closing. *See Opp.* 18:14–21.

The second Preliminary Title Report was prepared by Premium Title's Steven Waters on July 18, 2011. *Id.*, Ex. 25. It does not list the Prior Mortgage in Schedule B. *Id.*, Ex. 25. Plaintiff alleges that Seller Defendants convinced Premium Title to issue a revised Preliminary Title Report in July 2011 because they knew that "it was their obligation to transfer the property to the Plaintiff free and clear of the [Prior Mortgage] and further recognized that Plaintiff would not have accepted a title insurance policy which showed the [Prior Mortgage] as an exception from coverage." *Id.* ¶ 49(e). Plaintiff further alleges that Seller Defendants forced Premium Title to change the second title report, despite knowing about the Prior Mortgage and the possibility that the Prior Mortgage was the product of fraud or forgery. *Id.* ¶ 49(b).

The third document is the Purchase and Sale Agreement. *Id.*, Ex. 17. The Purchase and Sale Agreement contains three implicated provisions: (1) a "waiver" provision, § 8.3.1; (2) an "exculpatory" provision, § 14; and (3) a merger provision, § 16.3. The waiver provision reads:

> <u>Notice of Title Defects</u>: Buyer shall have five (5) days from the date of Buyer's receipt of [a commitment or opinion issued by a title insurance company] to examine title and raise any objections which, if valid, would make title to the Property uninsurable. Buyer's objections must be made in writing and delivered to Seller by 3:00 p.m. ET on the last day of the aforementioned five (5) day period or Buyer's objections will be deemed waived.

*FAC*, Ex. 17, § 8.3.1. The "exculpatory" provision reads:

> **<u>INDEMNIFICATION</u>**
>
> In consideration of the sale of the Property to Buyer, and/or in consideration of Seller paying the examination fee, the premium for the Owner's Policy and/or any payment contemplated by this Agreement, receipt of which is hereby acknowledged, upon the Effective Date, Buyer does hereby release and agrees to indemnify, hold harmless and fully protect, defend, hold and forever discharges the Seller . . . from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be sustained by or made against Seller [] arising from or arising out of:
>
> (a) Any provision of this Agreement, its exhibits, schedules, addenda or amendments;
>
> (b) Title inspections or repairs, made by Buyer or Buyer's agents, employees, contractors, successor or assigns . . . .

*FAC*, Ex. 17, § 14. The merger provision reads:

> **<u>Entire Agreement</u>**: This Agreement . . . constitutes the entire agreement between Buyer and Seller concerning the subject matter hereof and supersedes all previous communications, understandings, representations, warranties, covenants or agreements, either written or oral and there are no oral or other written agreements between Buyer and Seller. NO ORAL PROMISES, REPRESENTATIONS (EXPRESS OR IMPLIED), WARRANTIES OR AGREEMENTS MADE BY SELLER AND/OR BROKERS OR ANY PERSON ACTING ON BEHALF OF SELLER SHALL BE DEEMED VALID OR BINDING UPON SELLER UNLESS EXPRESSLY INCLUDED IN THIS AGREEMENT. All negotiations are merged into this Agreement. Seller is not obligated by any other written or verbal statements made by Seller, Seller's representatives, or any real estate licensee.

*FAC*, Ex. 17, § 16.3.

Now before the Court is Defendants HSBC Bank USA, N.A. and Ocwen Loan Servicing, LLC's motion to dismiss the third cause of action for negligent misrepresentation and the fourth cause of action for breach of contract. Dkt. # 31. Plaintiff opposes the motion. Dkt. # 39.

## II. <u>Judicial Notice</u>

Defendants ask the Court to take judicial notice of two documents. The first document is the June 13, 2011 receipt, signed by Plaintiff, which allegedly acknowledges that Plaintiff received the May 2011 Preliminary Title Report containing information about the Prior Mortgage. *See Defendants' Request for Judicial Notice*, Dkt. # 32. The second document is a deed of trust, recorded on October 29, 2013, that corresponds with Plaintiff's refinancing of her 2011 purchase-money loan from August Financial. *See Defendants' Supplemental Request for Judicial Notice*, Dkt. # 42.

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and the documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Federal Rule of Evidence 201 allows a court to take judicial notice of a fact that is "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, through the doctrine of incorporation by reference, the court may consider documents that are incorporated by reference in the complaint, but not physically attached to the complaint, if they are central to plaintiff's claim and no party questions their authenticity. *See Marder v. Lopez*, 450 F. 3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." (citing *Branch v. Tunnell*, 14 F.3d 449, 454–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

Defendants have not shown that Rule 201 or the doctrine of incorporation by reference applies to the June 13, 2011 receipt, and so the Court DENIES Defendants' request to take judicial notice of this first document. Since the receipt appears to be held in the records of a private entity, Premium Title, it is not from a public source or other source "whose accuracy cannot reasonably be questioned." Moreover, the FAC expressly attacks Premium Title's accuracy and truthfulness in issuing the Preliminary Title Reports that are disputed here. *See FAC* ¶ 49(e). Defendants also have not established that the June 13, 2011 receipt is referenced in the Complaint. Although the Complaint attaches the May 2011 Preliminary Title Report, the Complaint never states that Plaintiff received the report or that Plaintiff acknowledged receipt of the report on June 13, 2011. Rather, Plaintiff points out that the May 2011 Preliminary Title Report and the June 13, 2011 receipt are two separate documents, signed at different times, and prepared by different employees at Premium Title. *See Opp.* 16:21–28. Defendants have thus not carried their burden of establishing that the receipt is judicially noticeable.

The Court will, however, take judicial notice of the deed of trust, recorded on October 29, 2013. Under Rule 201, the court may take "judicial notice of facts that are a matter of public record." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents filed at the county recorder's office, including deeds of trust). Because the deed of trust was filed in the Los Angeles County Recorder's Office, it is a public document and within the Court's authority to notice. The Court thus GRANTS Defendants' supplemental request for judicial notice and incorporates the October 29, 2013 deed of trust into its review of the FAC.

III. Legal Standard

Defendants challenge Plaintiff's standing to bring this case under Rule 12(b)(1), alleging that injury has not yet occurred because PennyMac has not yet foreclosed on the property. Defendants also challenge the merits of the claims under Rule 12(b)(6).

A. Rule 12(b)(1)

Rule 12(b)(1) requires a court to dismiss a case if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). At the pleading stage, plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction and must do so by "clearly . . . alleg[ing] facts demonstrating" each element. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A court does not have subject matter jurisdiction over a case if the plaintiff does not have standing to sue. U.S. Const. art. III, § 2. To satisfy Article III's standing requirements, plaintiff must have (1) suffered an injury in fact, (2) that is traceable to the defendant's acts, and (3) that can be redressed by a favorable judicial decision. *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Where a plaintiff seeks declaratory and injunctive relief, plaintiff must also show a significant possibility of future harm. *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

B. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must accept the facts pled in the complaint as true and construe them in the light most favorable to the

plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067–68 (9th Cir. 2009). The court, however, is not required to accept "legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679–80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

## IV. Discussion

This motion implicates only Plaintiff's third and fourth causes of action for negligent misrepresentation and breach of contract. Defendants move to dismiss the causes of action on the same five grounds: (1) Plaintiff's claims are not ripe because PennyMac has not foreclosed on the property, (2) the causes of action are time-barred by the applicable statutes of limitations, (3) the causes of action are barred by the exculpatory clause in the Purchase and Sale Agreement, (4) Plaintiff waived both causes of action in the waiver clause in the Purchase and Sale Agreement, and (5) the FAC fails to state a claim.

The Court first addresses Defendants' standing argument that the claims are not ripe for adjudication. Ultimately disagreeing with Defendants and finding Plaintiff's claims ripe, the Court then turns to Plaintiff's cause of action for negligent misrepresentation. This cause of action survives the four additional attacks levied in the motion to dismiss. The Court then turns to Plaintiff's cause of action for breach of contract. Because the Court agrees with Defendants that this cause of action is barred by the exculpatory clause in the Purchase and Sale Agreement, the Court need not address Defendants' other arguments about that claim. All totaled, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss the FAC, leaving only the negligent misrepresentation claim remaining.

### A. Ripeness and Constitutional Injury

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to consideration of only actual cases and controversies. U.S. Const. art. III, § 2; *see Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). Ripeness is a "question of timing" that

prevents courts from issuing advisory opinions or "entangling themselves in abstract disagreements." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009) (internal quotation marks and citations omitted). "Constitutional ripeness, in many cases, 'coincides squarely with standing's injury in fact prong' and 'can be characterized as standing on a timeline.'" *Id.* To satisfy the injury-in-fact requirement, a plaintiff must show that she has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167, 180–81 (2000).

Defendants assert that Plaintiff's claims are not ripe for adjudication because Plaintiff has not yet lost the property to foreclosure and may not ever lose her rights as record owner. *See Mot.* 8:1–15. The Court disagrees and finds both Plaintiff's negligent misrepresentation and breach of contract claims ripe for adjudication. Plaintiff alleges that, because of Defendants' misrepresentations, the property that she purchased is worth less than what she believed it was worth. *See FAC* ¶¶ 28, 33. At the time of closing, Plaintiff believed that she had purchased the property "free and clear of all deed of trust liens." *See FAC* ¶ 28. Instead, she purchased property encumbered by a prior lien for more than $300,000. The Prior Mortgage left the property "underwater," meaning that the amount of the loans on the property exceeded the fair market value of the property. *See id* ¶ 33. It is common knowledge that a property that is "underwater" is less desirable and harder to sell than an unencumbered property because the home owner's liabilities are greater than the property's worth. Plaintiff is thus already injured by the difference between the property as conveyed and the property as Defendants allegedly represented it (free and clear of encumbrances). *See Alfaro v. Cmty. Housing Imp. Sys. & Planning Ass'n, Inc.*, 171 Cal. App. 4th 1356, 1383 (2009) (recognizing injury in a fraudulent purchase transaction as the "difference between the actual value of that with which the defrauded person parted and the actual value of that which he received"); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 605 (C.D. Cal. 2012) (defining injury as "the difference in actual value between what the plaintiff[s] gave and what [the defendants] received").

Moreover, the threat of foreclosure here is not so remote as to raise concerns about advisory opinions. PennyMac has already formally commenced foreclosure proceedings by recording a Notice of Default, *FAC* ¶ 33, and Plaintiff has already incurred costs in the form of attorneys' fees to protect her interests, *see FAC, Prayer for Relief* ¶ 7. Plaintiff has also made payments on the August Financial loan that she used to purchase the home and so has relied on Defendants' alleged misrepresentations of the property's worth. *See FAC* ¶ 32. In similar circumstances, California courts have recognized that Plaintiffs' attorneys' fees in this action alone may be enough to establish a concrete injury. *See Prentice v. N. Am. Title Guaranty Corp.*, 59 Cal. 2d 618, 620 (1963) (allowing a plaintiff to recover attorneys' fees from an escrow

holder when the escrow holder's negligence required plaintiff to assert a quiet title action to protect his property) ("A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorneys' fees, and other expenditures thereby suffered or incurred.").

Accordingly, the Court finds that Plaintiff's claims are ripe for adjudication and turns to the merits of each claim.

B. Count Three: Negligent Misrepresentation

Plaintiff's third cause of action is for negligent misrepresentation. To plead a cause of action for negligent misrepresentation under California law, Plaintiff must assert: (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages. *See Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). "Negligent misrepresentation requires a positive assertion to show a misrepresentation of a material fact; an omission or an implied assertion will not suffice." *Cutler v. Rancher Energy Corp.*, No. 13-0906 DOC (JPRx), 2014 WL 1153054, at *7 (C.D. Cal. 2014) (citing *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)). Here, the affirmative misrepresentation pled in the FAC is Defendants' statement in the Escrow Instructions that the property was "Free from Encumbrances Except: . . . (3) First Deed of Trust to record securing note in the amount of $154,400." *FAC* ¶¶ 50–51.

Defendants challenge Plaintiff's negligent misrepresentation claim on four grounds: (1) statute of limitations; (2) barred by the exculpatory clause; (3) waiver; and (4) failure to state a claim. The Court addresses each argument in turn.

*i. Statute of Limitations*

The statute of limitations for a negligent misrepresentation claim under California law is two years.[2] *See Ventura Cty. Nat'l Bank v. Macker*, 49 Cal. App. 4th 1528, 1531 (1996). Here,

[2] There is a good faith argument to be made that the statute of limitations for a negligent misrepresentation claim sounding in fraud is three years, not two. *See Alfaro*, 171 Cal. App. 4th at 1396 n.2 (treating home purchasers' claim that a vendor negligently failed to disclose a deed restriction as a fraud claim subject to a three-year statute of limitations); *Macker*, 49 Cal. App.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-9297 PSG (FFMx) | Date | April 20, 2017 |
| Title | Beatriz Carbajal v. HSBC Bank U.S.A., N.A. *et al.* | | |

the parties do not dispute that Defendants made the alleged misrepresentation on June 13, 2011, when they issued the Escrow Instructions, *see FAC*, Ex. 18, and that Plaintiff's cause of action accrued as of that date. However, the parties dispute whether Plaintiff is entitled to toll the statute of limitations from June 13, 2011 to April 16, 2014, when she received PennyMac's Notice of Default and allegedly discovered the Prior Mortgage for the first time. *FAC* ¶ 34. Plaintiff filed suit on March 22, 2016, less than two years after the April 16, 2014 date of alleged discovery. *See* Dkt. # 1-1, at p. 2.

Generally, the statute of limitations is triggered on the date of the injury, and a plaintiff's ignorance of the injury does not toll the statute. *See Royal Thrift & Loan Co. v. Cty. Escrow, Inc.*, 123 Cal. App. 4th 24, 43 (2004). However, if plaintiff alleges "delayed discovery" due to fraudulent concealment, courts may toll the statute of limitations "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 780 (9th Cir. 2002). "It is necessary for a plaintiff to allege facts showing that suit was brought within a reasonable time after discovery of the fraud without unnecessary delay and that failure to make discovery sooner was not due to negligence." *Alfaro*, 171 Cal. App. 4th at 1391. The decision to toll the statute is generally a question of fact. *See Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013); *cf. Sahadi v. Scheaffer*, 155 Cal. App. 4th 606, 611–12 (1995) ("[W]hen the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law.").

Defendants contend that Plaintiff is not entitled to toll the statute of limitations because Plaintiff had actual, inquiry, or constructive notice of the Prior Mortgage before April 2014. Defendants argue that: (1) Plaintiff had constructive notice of the Prior Mortgage because the Prior Mortgage was publicly recorded; (2) Plaintiff had actual notice and inquiry notice of the Prior Mortgage on June 13, 2011 when Plaintiff acknowledged receipt of the May 2011 Preliminary Title Report, which contained information about the Prior Mortgage; and (3) Plaintiff had actual notice of the Prior Mortgage in October 2013 when she refinanced her

---

4th at 1531 ("Negligent misrepresentation is born of the union of negligence and fraud. If negligence is the mother and misrepresentation is the father, it more closely resembles its mother."); *Katke v. Sears Mortgage*, No. G027304, 2003 WL 658571, at *2 (Cal. Ct. App. 2003) (explaining that the *Macker* court accepted a two-year statute of limitations because the "essence" of the negligent misrepresentation claim there sounded in "negligence, not fraud"). Because the issue of whether the two or three year statute of limitations applies is not outcome determinative here, given that Plaintiff filed suit within two years after discovery of the misrepresentation, the Court accepts, for purposes of this motion only, Defendants contention that the statute of limitations for the negligent misrepresentation cause of action is two years.

August Financial loan. *See Mot.* 10:7–14; *Reply* 8 n.5. For ease of argument, the Court first addresses Defendants' arguments regarding constructive notice and then turns to actual notice.

*a. Constructive Notice*

Under California law, a recorded conveyance imparts "constructive notice" of its contents to subsequent purchasers. Cal. Civ. Code § 1213; *see also Citizens for Covenant Compliance v. Anderson*, 12 Cal. 4th 345, 349 (1995). The term "conveyance" is broadly defined to include "every instrument in writing . . . by which the title to any real property may be affected . . . ." Cal. Civ. Code § 1215. "Constructive notice is the 'equivalent of *actual knowledge*; i.e., knowledge of its contents is conclusively presumed.'" 4 Witkin, Summary of Cal. Law (9th ed. 1987), Real Property § 203, p. 408. Here, no party disputes that non-parties Credit Corp. and California Reconveyance Company recorded the Deed of Trust and Assignment of Deed of Trust for the Prior Mortgage with the Los Angeles County Recorder's office before Plaintiff purchased the property in 2011. *See FAC* ¶¶ 13, 17, Ex. 5 (Deed of Trust, recorded April 14, 2005), Ex. 7 (Assignment of Deed of Trust, recorded May 15, 2009). Plaintiff thus is charged with constructive notice as early as June 2011.

Nevertheless, courts have recognized an exception to the constructive notice doctrine when the plaintiff alleges compelling facts that the seller concealed or misrepresented the condition of the title. *See Alfaro*, 171 Cal. App. 4th at 1385–89 (2009) (collecting cases); *see also Anderson*, 12 Cal. 4th at 366 ("If future takers purchase a piece of property with notice of a restriction made by a predecessor, then, *in the absence of duress or fraud*, they may ordinarily be thought to have bargained for the property with the restriction in mind, and to have shown themselves willing to abide by it."); *Seeger v. Odell*, 18 Cal. 2d 409, 414–17 (1941) ("Under a long line of cases, the fact that the victim had constructive notice of the truth from public records is no defense to fraud."); *City of West Hollywood v. Beverly Towers, Inc.*, 52 Cal. 3d 1184, 1194–95 (1991) (recognizing that fraud relieves property owners of constructive notice of statutes). Here, despite the recording of the Prior Mortgage, Plaintiff has shown that she is entitled to the exception for fraud under *Alfaro v. Community Housing Improvement Systems and Planning Association*, and so cannot be charged with constructive notice at the time of sale.

*Alfaro* concerned an arrangement that allowed low income applicants to become homeowners by pooling their resources and spending forty hours per family for eight to ten months building their own homes. 171 Cal. App. 4th at 1365. Under the deal, the applicants were not required to make payments on the promissory notes that the homeowners' association issued until the applicants sold or transferred their homes, at which point full payment was due. *Id.* at 1366. Approximately twenty people participated in the program and ultimately filed suit

because they allegedly did not know that their properties were subject to a deed restriction that required all units on the property to be sold for less than market value to low income households. *Id.* at 1364–65. The deed restriction substantially diminished the value of their homes.

Although the *Alfaro* plaintiffs had constructive notice of the deed restriction, the court concluded that they were entitled to the delayed discovery rule because of the seller's conduct. The deed restriction in *Alfaro* was publicly recorded but the deed restriction only appeared in some of the deeds of trust for some of the applicants. *Id.* at 1365, 1367–68. The applicants also received preliminary title reports that made reference to deed restrictions, but they did not describe the restrictions in any detail. *Id.* at 1367. The Court of Appeal held that the applicants could not be charged with constructive notice because the sellers, who had knowledge of the restriction, failed to put plaintiffs on notice or otherwise concealed the truth about the title. *Id.* at 1385–89 ("[D]efrauded buyer will not be deemed to have constructive notice of public records . . . ."), 1392–93 ("The recording [of a conveyance] does not relieve defendants from their duty as sellers of realty to disclose its existence."). The plaintiffs that received notice of the restriction in their deeds were charged with actual and inquiry notice of the restriction—a point discussed in the next section.

*Alfaro* controls the outcome here because the FAC alleges sufficient facts to raise a plausible claim that Defendants concealed or otherwise failed to notify Plaintiff of facts that were in Defendants' possession. Plaintiff alleges that the Seller Defendants learned of the Prior Mortgage in June 2009 and referred the matter to their attorneys. *FAC* ¶ 49(b). Attached as Exhibit 22 to the FAC is an email from counsel to the Seller Defendants that notified the Seller Defendants of the Prior Mortgage. *See FAC*, Ex. 22. The email also warned the Seller Defendants of possible "fraudulent conduct, forging signatures, falsifying loan information, failing to record deeds of trust, and using funds from loans and other sources as part of a Ponzi scheme"—issues that may have affected the validity of the Prior Mortgage. *Id.* Plaintiff further alleges that Seller Defendants worked with Premium Title, an affiliated title company, to issue a revised Preliminary Report in July 2011 that showed that the Prior Mortgage had been cleared from the title. *Id.* ¶ 49(e). The July 2011 Preliminary Title Report appears at Exhibit 25 of the FAC and does not contain information about the Prior Mortgage. *See FAC*, Ex. 25. The FAC alleges that Defendants affirmatively represented that title was "free from encumbrances" in the Escrow Instructions, affirmatively misrepresenting and failing to disclose the true state of the title. The Court finds these facts analogous to those presented in *Alfaro*, and so holds that Plaintiff cannot be deemed to have constructive knowledge of the Prior Mortgage in June 2011 or anytime thereafter.

*b. Actual and Inquiry Notice*

The term "actual notice" refers to what the Plaintiff actually knew about the status of the title of the loan at the time of closing. Though defrauded buyers "will not be deemed to have constructive notice of public records, this does not insulate them from evidence of their actual knowledge" of the status of the title. *See Alfaro*, 171 Cal. App. 4th at 1389 (interpreting *Bishop Creek Lodge v. Scira*, 46 Cal. App. 4th 1721, 1736 (1996) ("The reports serve to apprise the prospective insured of the state of title against which the insurer is willing to issue a title insurance policy.")).

Inquiry notice describes facts that put a plaintiff on notice of the need to further inquire or investigate title. *See Britton v. Girardi*, 235 Cal. App. 4th 721, 726 (2015). A purchaser who receives and reads a preliminary title report revealing the existence of a deed restriction has actual notice of its existence and is on inquiry notice of the nature of that restriction. *Alfaro*, 171 Cal. App. 4th at 1389–90; *Sain v. Silvestre*, 78 Cal. App. 3d 461, 470 (1978); *see also* Cal. Ins. Code §§ 12340.10, .11 (describing purpose of the preliminary title report as a way of reporting "all recorded conveyances" affecting "the chain of title to the realty property described therein"). Even if the plaintiff believed that defendants would clear the title of the conveyance at closing, plaintiff is charged with inquiry notice if she received the preliminary report that identified the prior conveyance. *See Scira*, 46 Cal. App. 4th at 1736 (requiring purchaser to investigate how lis pendens was cleared after purchaser received title report with lis pendens and asked the buyer to clear the title of encumbrances); *see also Tarke v. Bingham*, 123 Cal. 163 (1898) (same).

Here, whether Plaintiff had actual or inquiry notice of the Prior Mortgage is a question of fact not appropriate for resolution in a motion to dismiss. In the FAC, Plaintiff alleges that she did not have notice of the Prior Mortgage until April 2014 when she received the notice of default from PennyMac. *FAC* ¶ 34. At this phase, the Court must accept this factual allegation as true.

Defendants contend that Plaintiff had actual notice of the Prior Mortgage from the May 2011 Preliminary Title Report and from the process of refinancing her August Financial loan in October 2013. Although the Court is skeptical of Plaintiff's claim that she did not receive a copy of the May 2011 Preliminary Title Report, given Defendants' attachment of the signed receipt from June 2011, the Court has already decided that judicial notice of this receipt is inappropriate at this juncture. If Defendants are able to validate the authenticity of this receipt at some later point in the litigation, however, the Court predicts a hard road ahead for Plaintiff under *Scira* and *Alfaro* in surviving a subsequent challenge on the statute of limitations. Additionally, the Court cannot conclude from the fact that Plaintiff refinanced her loan in October 2013 that she received notice of the Prior Mortgage at that time. The deed of trust from

October 2013 does not refer to the Prior Mortgage, and Defendants do not state why Plaintiff would have received notice of the Prior Mortgage in October 2013 when she allegedly did not receive notice in June 2011 at the time of purchase. *See Supplemental RJN*, Ex. 1.

In sum, the Court concludes that the question of whether Plaintiff had actual or inquiry notice of the Prior Mortgage is a question of fact not appropriate for determination in a motion to dismiss. Additionally, Plaintiff cannot be charged with constructive notice at the time of sale because Plaintiff has alleged sufficient facts to establish that Defendants had a duty to disclose the defect in title or otherwise concealed the status of title.

*ii. Exculpatory Clause*

Defendants' second argument to dismiss the negligent misrepresentation claim is that the cause of action is barred by the exculpatory clause in the Purchase and Sale Agreement. The exculpatory clause states that the Buyer:

> release[s] and agrees to indemnify, hold harmless and fully protect, defend, hold and forever discharges the Seller . . . from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be sustained by or made against Seller [] arising from or arising out of . . . [t]itle inspections or repairs, made by Buyer or Buyer's agents, employees, contractors, successor or assigns . . . .

*FAC*, Ex. 17, § 14. Plaintiff asserts that the clause is unenforceable against the negligent misrepresentation claim because of California Civil Code section 1668. That section reads:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Plaintiff asserts that section 1668 bars Defendants from enforcing the exculpatory clause as to the negligent misrepresentation claim. *See Opp.* 23–25. In response, Defendants contend that the California Civil Code section does not apply to negligent misrepresentation claims because negligent misrepresentation is not a form of fraud. *See Reply* 8–11.

The California Court of Appeal case, *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 401–02 (1989), squarely resolves the issue in favor of Plaintiff. There, the court was faced with an exculpatory clause in a Purchase and Sale Agreement for a Continental DC-10 aircraft. *Id.* at 399. Defendant contended that the clause barred plaintiff's

claim for negligent misrepresentation and the court disagreed. Relying on California Civil Code section 1668, the court found that a cause of action for negligent misrepresentation "is a form of fraud and deceit" and declined to enforce the exculpatory provision. *Id.* at 403.

Defendants offer no convincing reason why the outcome in *Contintental* should not apply here. They argue that *Continental* is factually distinguishable because that case involved technical representations from aircraft professionals about the aircraft's specifications, and, in this case, "Defendants are not title insurance providers or professionals charged with providing title analyses." *See Reply* 9:6–28. Because section 1668 is trans-substantive, and on its face does not distinguish between technical and less technical representations, the Court sees no reason why this factual distinction between *Continental* and this case requires a different outcome here. Although some of the information in this case was publicly available while the information in *Continental* was not, the Court has already determined that Plaintiff should not be charged with constructive notice of the Prior Mortgage, given Defendants' misleading representations about the status of title. *Continental* thus applies here to prevent the Court from enforcing the exculpatory clause vis-à-vis the negligent misrepresentation claim, and the Court denies the argument.

*iii. Waiver*

Defendants' third argument to dismiss the negligent misrepresentation claim is waiver. Waiver is the intentional relinquishment of a known right after full knowledge of the facts. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *see also Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016). The burden is on the party claiming a waiver to prove it by "clear and convincing evidence that does not leave the matter to speculation." *See Waller*, 11 Cal. 4th at 31. "[D]oubtful cases will be decided against a waiver." *Id.* Moreover, California courts have recognized that waiver is generally a question of fact reserved for the trier of fact. *See Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991); *S.F. Bay Area Rapid Transit Dis. v. Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055, 1072–73 (N.D. Cal. 2015) ("Waiver is a question of fact . . . and always is based upon the parties' intent.").

The factual allegations in the FAC convince the Court that waiver is not appropriate for resolution in a motion to dismiss. Although section 8.3.1 of the Purchase and Sale Agreement required Plaintiff to raise objections to title within five days of the signing of the Purchase and Sale Agreement, Plaintiff contends that she did not have full knowledge of the state of the title when she adopted the waiver provision. What Plaintiff knew at the time of the alleged waiver is a factual question more appropriate for resolution in a motion for summary judgment or at trial.

Defendants are right that the waiver provision in the contract, which Defendants characterize as a warning to Plaintiff to check title, is one fact in Defendants' favor. Other facts, however, counsel in Plaintiff's favor. She has argued, for example, that Defendants deliberately concealed the state of title through their affiliated title company, and that, even if Plaintiff knew about the Prior Mortgage, she reasonably believed it would be cleared at closing, given the common practice in the industry of clearing encumbrances at closing and the July 2011 Preliminary Title Report that appeared to affirm that the Prior Mortgage had been cleared from title. *See Opp.* 18:14–21.

The Court must credit all factual allegations in Plaintiff's favor in a motion to dismiss. Because the dispute over Plaintiff's knowledge at the time of wavier raises a dispute of fact, the Court cannot grant Defendants' motion to dismiss on the waiver issue.

*iv. Failure to State a Claim*

Defendants' fourth and final challenge to the negligent misrepresentation claim is that Plaintiff has failed to state a claim for negligent misrepresentation. *See Mot.* 13–15. Defendants argue that: (1) they made no misrepresentations because the Escrow Instructions where the alleged misrepresentation occurred do not satisfy the Statute of Frauds; (2) any misrepresentations made in the Escrow Instructions were corrected in the Purchase and Sale Agreement; and (3) Plaintiff's reliance on the statement in the Escrow Instructions is not justifiable. Plaintiff has alleged sufficient facts in the FAC to rebut each of Defendants' arguments, and thus the Court too rejects this fourth challenge to the negligent misrepresentation claim.

Defendants' first two misrepresentation arguments are unavailing. Although the Statute of Frauds would prevent the Court from enforcing an agreement against a party that is not a signatory to the agreement, Defendants offer no authority to suggest that the Statute of Frauds bars Plaintiff's negligent misrepresentation claim. To the extent that Defendants argue that they did not make the alleged misrepresentation in the Escrow Instructions, this speaks to a question of fact not appropriate for resolution in a motion to dismiss. The FAC alleges that the Escrow Instructions were "affixed [with] a wet ink signature of an authorized representative below the signature line; deliver[ed] to Premium Title . . . with the HSBC entity name type-printed in the signature line constituting its signature; or perform[ed] under the PSA and Escrow Instructions by accepting Plaintiff's purchase money in the sum of $160,199 and transferring the property to her." *FAC* ¶ 30. These allegations are sufficient to raise a plausible claim that Defendants, and not other entities, made the alleged misstatement. These allegations may even be sufficient to satisfy the Statute of Frauds to the extent it applies to claims of negligent misrepresentation. *See*

*Felt v. L.B. Frederick Co.*, 92 Cal. App. 3d 157, 160 (1949) (recognizing that a printed name may be adopted as a signature in connection with the sale of real property).

Defendants' argument that the Purchase and Sale Agreement cured any alleged misrepresentation in the Escrow Instructions is also unconvincing. The Purchase and Sale Agreement does not expressly state that Defendants are conveying title subject to the Prior Mortgage. Although the Purchase and Sale Agreement stated that the Defendants would transfer "only that title which grantor may have," *FAC*, Ex. 17, ¶ 8.1, the Court is unconvinced that this statement alone cures Defendants of liability for the prior misrepresentation in the Escrow Instructions.

Finally, the FAC's factual allegations establish that reliance is not appropriate for resolution at this phase of the litigation. *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact."). Although "[t]he existence of such public records may be relevant to whether the victim's reliance was justifiable, [] it is not, by itself, conclusive." *Alfaro*, 171 Cal. App. 4th at 1385–86; *see also Seeger v. Odell*, 18 Cal. 2d 409, 414–17 (1941).

The FAC alleges sufficient facts to state a plausible claim that reliance was justifiable here. First, Plaintiff argues that, even if she knew about the Prior Mortgage at the time of closing, she reasonably believed that the Prior Mortgage would be cleared given the common practice in the industry of clearing all encumbrances at the time of closing. *See Opp.* 18:14–21 ("In a typical real estate transaction, as expert witness testimony in this action will show, a preliminary report will often list monetary liens that will be paid off and released as part of a transaction."). Second, Plaintiff asserts that reliance on the Escrow Instructions was justifiable because the fair market value of the property at the time of the sale was only $160,199.00, and no reasonable buyer would have purchased the property knowing that it was so far underwater with a Prior Mortgage. *FAC* ¶ 53. Because these allegations are not conclusory, the Court finds that they raise a plausible claim that Plaintiff's reliance on the Escrow Instructions was justified.

*v. Summary*

The Court rejects Defendants' arguments that Plaintiff's negligent misrepresentation claim is barred by the statute of limitations or the exculpatory and waiver provisions in the Purchase and Sale Agreement. The Court also finds that Plaintiff has asserted sufficient facts to state a plausible claim for negligent misrepresentation. The Court therefore DENIES Defendants' motion to dismiss the claim for negligent misrepresentation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 16-9297 PSG (FFMx) | Date | April 20, 2017 |
| Title | Beatriz Carbajal v. HSBC Bank U.S.A., N.A. *et al.* | | |

C. Count Four: Breach of Contract

The Court now turns to Plaintiff's fourth cause of action for breach of contract. Under California law, the elements of a claim for breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Although Defendants raise multiple arguments against the breach of contract claim, the winning argument is grounded in the exculpatory clause of the Purchase and Sale Agreement. It is this argument that the Court focuses on here.

Although the Court earlier held that California Civil Code section 1668 applies to allow Plaintiff to assert a negligent misrepresentation claim despite the exculpatory clause in the contract, there is no equivalent Civil Code section that allows Plaintiff to avoid the exculpatory clause with the breach of contract claim. Plaintiff's sole argument against the exculpatory clause is that applying it to the breach of contract claim would lead to an unconscionable result. *See Opp.* 26:4–12. Plaintiff points to California Civil Code section 1670.5, which bars clauses in contracts that are "unconscionable" at the time the contract was made. Cal. Civ. Code § 1670.5; *see Opp.* 22:12–26.

Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable. *See Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). "The procedural element focuses on two factors: 'oppression' and 'surprise.' . . . Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. . . . Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997). "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003). "Both elements must be present, but 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Woodside Homes of Cal., Inc. v. Superior Court*, 107 Cal. App. 4th 723, 727 (2003).

Plaintiff's unconscionability arguments fail because the factual allegations in the FAC, although supportive of a claim for negligent misrepresentation, do not support a claim for unconscionability. Even if the process of negotiating the Purchase and Sale Agreement was mired with oppression and surprise—a contested fact given that Plaintiff was represented by an

agent at the sale, could have negotiated for a revised indemnity term, and had access to public records that would have provided information of the Prior Mortgage—the alleged facts do not support a claim that the Purchase and Sale Agreement is *substantively* unconscionable. Courts have found that this second factor, which focuses on the terms of the contract, is the "ultimate issue." *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016).

Here, the only term alleged substantively unconscionable is the exculpatory provision. *See Reply* 11 n.6; *see also FAC*, Ex. 17. Substantive unconscionability focuses on whether enforcing the terms would lead to an "overly harsh or one-sided result." *Farrar v. Direct Commerce*, No. A146944, 2017 WL 1090483, at *3 (Cal. Ct. App. Mar. 23, 2017). Here, even when the exculpatory clause is placed within the context of the parties' interactions, the term is not unconscionable because it does not leave Plaintiff without a remedy for Defendants' misrepresentations. As this Court earlier concluded, Plaintiff may bring a negligent misrepresentation claim to challenge any misrepresentations that Defendants made in other parts of the transaction. This outcome is aligned with the legislature's preference, stated in Civil Code section 6618, that the proper cause of action for factually analogous situations is negligent misrepresentation or a cause of action for fraud, not breach of contract. Giving effect to the exculpatory clause also gives force to the parties' intent to limit the additional claims that the Buyer might bring against the Seller.

Having rejected Plaintiff's sole counter-argument against Defendants' breach of contract attacks grounded in the exculpatory clause, the Court finds that the exculpatory clause applies to bar Plaintiff's breach of contract claim. It therefore GRANTS Defendants' motion to dismiss the breach of contract claim.

D. Leave to Amend

The final question is whether the Court should grant leave to amend. "Generally [Federal Rule of Civil Procedure] 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curium) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). The Court, however, may deny leave to amend if plaintiff has repeatedly failed to cure deficiencies or if amendment would be futile. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041–42 (9th Cir. 2015). Plaintiff requests leave to amend. *Opp.* 30:2–6.

The Court dismissed Plaintiff's claim for breach of contract under the exculpatory clause provision in the Purchase and Sale Agreement. Because this claim could theoretically be fixed if

Plaintiff pled sufficient facts to state a plausible claim that the transaction was unconscionable, the Court will grant leave to amend.

## V. Conclusion

The Court DENIES Defendants' motion to dismiss Plaintiff's third cause of action for negligent misrepresentation, and GRANTS Defendants' motion to dismiss Plaintiff's fourth cause of action for breach of contract WITH LEAVE TO AMEND.

**IT IS SO ORDERED**.